Ignacio Javier Hiraldo, Esq.
SBN 354826
**IJH LAW**
1100 Town & Country Road
Orange, CA 92868
Phone: (657) 200-1403
Email: ijhiraldo@ijhlaw.com

Lisa M. Freeman, Esq.
SBN 258549
**Dapeer Law, P.A.**
1500 W Olympic Blvd. Suite 550
Los Angeles, CA 90064
323-701-0508
Email: lisa@dapeer.com

*COUNSEL FOR PLAINTIFF AND THE PROPOSED CLASSES*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDWIN COMBS, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

UG FRANCHISE OPERATIONS, LLC d/b/a UFC GYM,

Defendant.

Case No.: 5:26-cv-01764-KK-DTB

**FIRST AMENDED CLASS ACTION COMPLAINT**[1]

**CLASS ACTION**

**JURY TRIAL DEMANDED**

---

[1] Amended as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Pursuant to the Court's Civil Standing Order, a redline document reflecting the amendments is attached as **Exhibit A.**

Plaintiff Edwin Combs brings this class action against UG Franchise Operations, LLC d/b/a UFC Gym ("UGFO" or "Defendant"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA").

2. To promote its goods and services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations.

3. Defendant also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing.

4. Defendant initiates, causes to be initiated, authorizes, controls, and/or approves UFC GYM text-message marketing directly and through UFC GYM franchisees, operators, employees, and approved marketing vendors. The text messages challenged here were sent by Defendant or, in the alternative, by a UFC GYM franchisee, operator, or vendor acting on Defendant's behalf for the purpose of encouraging Plaintiff and the Classes to purchase or renew UFC GYM memberships, recovery services, personal-training services, and related goods or services.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the intrusion upon seclusion, invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the members of the Classes. Plaintiff also seeks statutory damages on behalf of Plaintiff and the members of the Classes, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs and markets its business activities to this District, because Defendant's unauthorized marketing scheme was directed to consumers in this District, and because Defendant maintains its principal place of business at 4160 Temescal Canyon Road, Suite 112, Corona, California, within this District.

## PARTIES

8. Plaintiff is a natural person entitled to bring this action under the TCPA, and a citizen and resident of Kane County, Illinois.

9. Defendant UG Franchise Operations, LLC is a California limited liability company. UGFO is the franchisor of the UFC GYM® franchise system and maintains its principal place of business in Corona, California.

10. UGFO offers and sells franchises for UFC GYM businesses and states in its 2026 Franchise Disclosure Document that it services, supports, and administers all functions inherent in operating a UFC GYM business under its franchise system.

11. UGFO contracts with UFC GYM franchisees for use of the UFC GYM marks and system and retains contractual authority over mobile-marketing standards and approval, marketing suppliers, required software systems, and access to franchisee data, as detailed below.

12. Upon information and belief, the challenged text messages were sent by UGFO or by one or more UFC GYM franchisees, operators, employees, or approved vendors acting on UGFO's behalf. This allegation is based on the messages' UFC GYM/FIT and UFC Gym Midtown identification, their standardized content and reply commands, and UGFO's contractual control over mobile marketing, approved marketing suppliers, required software, and franchisee data access.

13. In the alternative, to the extent a franchisee, operator, employee, software vendor, or marketing vendor transmitted the messages, that person or entity acted with

UGFO's actual or apparent authority and on UGFO's behalf for the reasons alleged below.

14. Unless otherwise indicated, references to Defendant include persons or entities acting with UGFO's actual or apparent authority or on UGFO's behalf.

## FACTS

15. Defendant UGFO is the franchisor of the UFC GYM franchise system. UGFO's 2026 Franchise Disclosure Document ("FDD") states that the UFC GYM franchise is operated under the UFC GYM name as a membership-based physical fitness facility.

16. UGFO sells and administers UFC GYM franchises and collects royalties and marketing contributions tied to franchise revenues.

17. UGFO's own franchise materials reflect that UFC GYM franchise marketing is not left to the unfettered discretion of a local gym. Instead, UGFO requires that all advertising and marketing in any medium, including social media and mobile marketing, conform to UGFO's standards in the Operations Manual and be approved by UGFO before use.

18. Upon information and belief, the "mobile marketing" governed by UGFO's franchise materials includes text-message campaigns like the UFC GYM/FIT and UFC Gym Midtown messages Plaintiff received as demonstrated below.

19. UGFO also reserves the right to require franchisees to use marketing suppliers designated by UGFO.

20. UGFO's 2026 Franchise Disclosure Document identifies 3635 NE 1st Avenue in Miami—the Midtown location named in messages Plaintiff received—as an operational UFC GYM franchise within UGFO's system.

21. The texts at issue used UFC GYM and UFC GYM/FIT branding, promoted UFC GYM memberships and recovery services, and included standardized reply commands such as "STOP," "YES," "YOUTH," and "RENEW" indicative of automated text marketing.

22. Upon information and belief, UGFO's franchise materials require or approve lead-management, membership-management, and sales/marketing software for UFC GYM franchisees.

23. UGFO's FDD identifies required vendors including ABC Fitness Solutions and GymSales Software and states that billing services and lead-management fees may include additional fees for text, email, and phone options.

24. UGFO requires franchisees to install and operate a club management and sales/marketing computer system and an approved Point of Sale ("POS") system. Those systems record UFC GYM customers, collect membership fees electronically, capture data for business applications, process membership and financial data, and communicate data to UGFO.

25. UGFO retains independent access at all times to information in the franchisee software program, including financial reports, and retains the right to collect and retain data concerning the gym.

26. UGFO's form franchise agreement provides that UGFO may require a franchisee's Gym Management System to automatically transmit data and reports to UGFO; may electronically connect to the system at any time without notice to monitor or retrieve stored data for any purpose UGFO deems necessary; has no contractual limitations on its right to access the information and data; and must receive the access codes, static IP addresses, and other information needed to facilitate that access.

27. Upon information and belief, UGFO also controls electronic and online marketing channels using the UFC GYM marks.

28. Upon information and belief, franchise materials state that UGFO may design and provide web pages for promotion of a gym, act as webmaster with sole discretion and control over such pages, and review, monitor, restrict, and prohibit online content on social media sites, blogs, electronic communications, and other online sites containing UFC GYM trademarks.

29. UGFO maintains and operates the UFC GYM Marketing Fund to conduct regional and/or national advertising and promotional activities for the UFC GYM system, including advertising campaigns, test marketing, marketing surveys, public relations activities, marketing materials, social media, direct mail, media advertising, and the use of advertising agencies.

30. The Marketing Fund is maintained and operated by Defendant UGFO for the benefit of all contributing UFC GYM businesses, including the Franchisees and company-owned outlets, and was established in April 2008.

31. Upon information and belief, UGFO's franchise agreement further provides that if a franchisee fails to satisfy local-advertising obligations, UGFO may withhold amounts from the franchisee's remittance account and "place marketing" for the franchisee if UGFO elects to do so. Thus, UGFO has reserved the contractual right not merely to approve marketing but to directly place marketing for a UFC GYM franchisee.

32. UGFO publicly holds out the UFC GYM corporate team as providing ongoing systems, operations, and marketing support to franchisees. *See, e.g.,* UFC Gym, Four Ways UFC Gym Supports Franchise Owners Like You, available at https://ufcgymfranchise.com/four-ways-ufc-gym-supports-franchise-owners-like-you/ (last visited July 16, 2026).

33. Similarly, UGFO holds out the UFC GYM team's "Local & National Marketing & Promotion", stating, "Rely on the UFC brand for the best and most engaging marketing materials to help you fill your gym from day one." *See* UFC Gym, Growing Your Gym, available at https://ufcgymfranchise.com/growing-your-gym/ (last visited July 16, 2026). This includes "[d]igital and social media marketing". *Id.*

34. Upon information and belief, UFC GYM franchise materials state that franchisees can rely on the UFC brand for local and national marketing and promotion, including local grassroots marketing, grand opening PR, digital and social media marketing, print advertising, and additional media.

35. For example, a March 2026 Franchise Times article concerning UFC GYM reported that prospective members of a UFC GYM franchise were drawn in by a "social media marketing campaign orchestrated by UFC's corporate office." *See* Franchise Times, Outside the Octagon: UFC Gym Fights to Broaden Its Appeal, available at https://www.franchisetimes.com/fitness-finance/outside-the-octagon-ufc-gym-fights-to-broaden-its-appeal/article_6f1ffaba-0515-4f4a-92e8-2b6a4e58169d.html (last visited July 16, 2026).

36. In the same article, CEO Adam Sedlack described UFC GYM as a "plug-and-play system" for franchisees, stated that UFC GYM had "invested heavily in marketing," and described a "digital ecosystem technology" allowing UFC GYM to connect with UFC GYM leaders in minutes and provide ongoing virtual training.

37. UGFO's 2026 Franchise Disclosure Document states that UGFO may, in its sole discretion, require UFC GYM (Signature) and UFC FIT franchisees to enter a Management Services Agreement with UGFO's affiliate, and it attaches a form agreement as Exhibit M.

38. The form Management Services Agreement attached to UGFO's 2026 Franchise Disclosure Document places operation of a managed franchise under the manager's exclusive supervision and control and requires the manager to arrange and supervise advertising, prepare marketing plans, and select and manage member-management and point-of-sale software.

39. In a July 2025 bankruptcy status report filed by UGFO in In re SEN Fitness Group, UGFO described UFC GYM businesses as operating under the UFC GYM name with distinctive business formats, methods, procedures, designs, layouts, standards, and specifications. UGFO further represented that a related management agreement gave UGFO's affiliate authority and responsibility for management and operation, including overseeing public relations and providing back-office support.

40. The same bankruptcy status report attached a term sheet under which a new UFC GYM franchisee would acquire business assets including customer/member

lists, membership agreements, personal-training and recovery-services contracts, bank accounts, cash, receivables, ABC accounts, dues, revenue, and related rights. This filing corroborates that UFC GYM marketing and operations use identifiable member/customer lists, membership agreements, and required vendor accounts.

41. Upon information and belief, the text messages received by Plaintiff were sent through, using, or based on customer/member data maintained in UFC GYM sales, marketing, lead-management, membership-management, or POS software required or approved by Defendant, and/or through a marketing vendor approved or designated by Defendant.

42. Upon information and belief, the challenged text messages were initiated by Defendant or, in the alternative, were transmitted by a UFC GYM franchisee, operator, employee, software vendor, or marketing vendor acting with Defendant's authority and on Defendant's behalf. This inference is supported by the messages' identification of the sender as UFC GYM/FIT or UFC Gym Midtown, their promotion of UFC GYM memberships and services, and Defendant's contractual rights over mobile marketing, marketing approval, suppliers, required software, and franchisee data access.

43. In the alternative, to the extent the text messages were transmitted by a UFC GYM franchisee, local manager, employee, affiliate, software vendor, or marketing vendor, that person or entity acted with Defendant's actual authority because Defendant authorized UFC GYM mobile marketing, controlled or had the right to control the content and branding of UFC GYM marketing, required prior approval of mobile marketing materials, could designate marketing suppliers, required or approved the software systems used to send and track such communications, and retained access to customer/member data and campaign records.

44. The persons or entities that sent the messages also acted with Defendant's apparent authority. UGFO required approval of mobile marketing using UFC GYM marks and publicly represented that its corporate team provides franchisees with local

and national marketing support. Each text identified the sender as UFC GYM, UFC GYM/FIT, or UFC Gym Midtown, used UFC GYM branding, promoted UFC GYM memberships or services, and instructed consumers to reply with standardized keywords. Nothing in the messages disclosed that they were sent by an entity acting independently of Defendant.

45. Plaintiff's "Stop" request was directed to a sender identified only as UFC GYM/FIT, not to a separately identified local entity. Because the later messages likewise identified the sender as UFC GYM/FIT or UFC Gym Midtown and promoted the same UFC GYM memberships and services, a reasonable consumer would expect the request to apply to Defendant and the UFC GYM system sender.

46. Defendant was the person or entity on whose behalf the telemarketing messages were made because the messages advertised UFC GYM memberships and services, used the UFC GYM marks and brand goodwill, sought to increase franchise revenues from which Defendant received royalties, marketing contributions, and other fees, and promoted goods or services sold within Defendant's UFC GYM franchise system.

47. Defendant can redress the violations alleged here because Defendant controls or has the contractual right to control UFC GYM mobile-marketing standards, UFC GYM-approved marketing content, UFC GYM marks, marketing suppliers, franchisee sales/marketing software requirements, and access to customer/member data used in UFC GYM text-message marketing.

48. Plaintiff was one of many individuals to whom Defendant sent automated solicitation text messages and whom Defendant continued to text even after requests by individuals to opt out of Defendant's text messaging.

49. Specifically, on or about November 20, 2024, at 2:51 PM, Plaintiff requested to opt-out of Defendant's text messages by replying with a "Stop" instruction to the phone number (949) 332-5008 as reflected by the following screenshot:




50. As shown in the above screenshot, the texts used Defendant's UFC GYM/FIT brand and were not sent exclusively for a particular location.

51. Despite Plaintiff's Stop request, Defendant ignored Plaintiff's request and continued text messaging Plaintiff from the phone numbers (786) 453-1860, (850) 920-7757, and (888) 752-7596, including on or about December 22, 2024, at 6:07 PM; July 20, 2025, at 12:12 PM; August 8, 2025, at 1:49 PM; August 12, 2025, at 8:20 AM; and August 28, 2025, at 12:23 PM, as reflected by the following:


23
+1 (786) 453-1860
Text Message
Today 6:07 PM
Hey this is Francesco the Operations Manger at UFC GYM,
We at UFC GYM Midtown would love to welcome you back to the family! To celebrate the holidays and help you crush your fitness goals, we're offering two incredible deals exclusively for our cancelled members:
1. Rejoin for only $300: Get 1 year and 4 months of membership, plus 1 month of FREE recovery services.
2. Buy 1 Year for $799, Get 1 Year FREE: Enjoy guest access, unlimited classes, and multi-club access—a perfect deal to take your fitness to the next level!
Don't miss this chance to return to the gym that helps you become your best self. These offers are available for a limited time, so act now!
Give me a call or shoot me a text at (786) 889-8085 to secure your spot and get back in the game.
We can't wait to see you again!
The sender is not in your contact list.
Report Junk
Text Message


11:56
80
39
+1 (850) 920-7757
Text Message • SMS
Today 12:12 PM
UFC Gym Midtown
FLASH SALE: 5 epic ways to save! Up to 50% off family add-ons, $49 performance add-on, $100 off enrollment, 1 mo FREE Champion & more! Ends soon. Reply YES to claim!
Reply STOP to unsubscribe
The sender is not in your contact list.
Report Junk
Text Message • SMS


2:19
72
30
+1 (888) 752-7596
Text Message • SMS
Today 1:49 PM
UFC GYM/FIT:
Time is money-and it's also rewards! Renew your Paid-in-Full membership and unlock stacked bonuses based on how fast you act.
Text STOP to opt-out
The sender is not in your contact list.
Report Junk
Text Message • SMS


3:38
LTE 35
41
+1 (850) 920-7757
Text Message • SMS
Sun, Jul 20 at 12:12 PM
UFC Gym Midtown
FLASH SALE: 5 epic ways to save! Up to 50% off family add-ons, $49 performance add-on, $100 off enrollment, 1 mo FREE Champion & more! Ends soon. Reply YES to claim!
Reply STOP to unsubscribe
Today 8:20 AM
UFC Gym Midtown
Add a Youth Membership for your family for just $1 down + $10 off monthly dues! First payment not due until 8/29. Offer ends Sun 8/17. Reply YOUTH to learn more!
Reply STOP to unsubscribe
The sender is not in your contact list.
Report Junk
Text Message • SMS


12:23
21
31
+1 (888) 752-7596
Text Message • SMS
Fri, Aug 8 at 1:49 PM
UFC GYM/FIT:
Time is money-and it's also rewards! Renew your Paid-in-Full membership and unlock stacked bonuses based on how fast you act.
Text STOP to opt-out
Today 12:23 PM
UFC GYM/FIT: Double Dip Renewal! Renew 12mo PIF by 8/31 & get 2mo FREE + 2 PT, 2 Recovery, 2 guest passes! Reply RENEW now!
Text STOP to opt-out
The sender is not in your contact list.
Report Junk
Text Message • SMS

52. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

53. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to advertise, promote, and/or market UFC GYM goods or services promoted by or on behalf of Defendant.

54. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding with Defendant's required "stop" instruction, but Defendant continued to text message Plaintiff.

55. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

56. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

57. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its failure to maintain an adequate do-not-call list are solely within Defendant's knowledge and control.

58. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to send text messages.

59. Defendant sent at least two solicitations after Plaintiff's initial opt-out request.

60. Plaintiff is the regular user of the telephone number that received the above text message solicitations.

61. Plaintiff utilizes the cellular telephone that received Defendant's text messages for personal purposes and the number is Plaintiff's residential telephone line. Plaintiff registered the cellular telephone number on the National Do Not Call Registry on or about June 16, 2012.

62. Upon information and belief, outbound transmission reports and inbound opt-out logs exist in UFC GYM software and vendor systems to which Defendant has contractual access rights and/or in systems maintained by UFC GYM franchisees and approved vendors. These reports and logs identify the dates, times, target telephone numbers, message content, and inbound opt-out requests for Plaintiff and members of the Classes.

63. Upon information and belief, those reports and logs are located in Defendant's systems, franchisee systems required or approved by Defendant, and/or systems maintained by vendors required or approved by Defendant, such as ABC Fitness Solutions, GymSales Software, or other SMS, CRM, lead-management, membership-management, or POS vendors. Such records will identify the sender account, campaign name, template, recipient list, opt-out events, suppression-list processing, and users who created, approved, or launched the text-message campaigns.

64. Defendant's text messages caused Plaintiff and the members of the Classes harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

65. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

66. Plaintiff brings this case on behalf of two separate Classes defined as follows:

The Stop Class:

> **All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding UFC GYM goods or services, to said person's residential cellular telephone number, after communicating to Defendant or the sender that they did not wish to receive text messages by replying with a "stop" or similar opt-out instruction.**

The DNC Registry Class:

> **All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, promoting UFC GYM goods or services, to said person's residential cellular telephone number, where that telephone number had been registered on the National Do Not Call Registry for more than 31 days at the time of the messages.**

67. The Stop Class and the DNC Registry Class are referred to collectively as the "Classes."

68. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

69. Defendant and its employees or agents are excluded from the Classes.

**<u>NUMEROSITY</u>**

70. Plaintiff does not know the exact number of members of the Classes but is informed and believes that there are at least 50 individuals that fall within the class definitions given Defendant's use of automated robotexts to solicit consumers and refusal to honor stop requests. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

71. The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of the members of the Classes is a matter capable of ministerial determination from Defendant's, UFC GYM franchisees', and approved vendors' records and the National Do Not Call Registry.

**Common Questions of Law and Fact**

72. There are numerous questions of law and fact common to members of the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the members of the Classes are:

a. Whether Defendant sent text messages to Plaintiff and members of the Classes;
b. Whether the text messages were sent directly by Defendant, or with Defendant's actual or apparent authority or on Defendant's behalf;
c. Whether Defendant controlled, approved, or had the right to control the UFC GYM mobile-marketing content, suppliers, software, customer/member data, phone numbers, reply commands, and opt-out processing used to send the challenged text messages;
d. Whether Defendant continued to send text message solicitations after opt-out requests;
e. Whether Defendant failed to honor Plaintiff's and the Stop Class members' opt-out requests;
f. Whether Defendant implemented the requisite training of personnel under section 64.1200;
g. Whether Defendant maintains an internal do-not-call list and instruct its employees on how to use the list;

h. Whether Defendant maintains the required policies and procedures under section 64.1200;

i. Whether Defendant initiated, or made or had made on its behalf, more than one telephone solicitation text message within any 12-month period to residential telephone numbers registered on the National Do Not Call Registry; and

j. Whether Defendant is liable for damages, and the amount of such damages.

73. The common questions in this case are capable of having common answers, and Plaintiff and the members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

74. Plaintiff's claims are typical of the claims of the Classes' members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE MEMBERS OF THE CLASSES**

75. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. There are no conflicts of interest between Plaintiff and the other members of the Classes. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

76. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Classes prosecuting their own

separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

77. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**

**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Stop Class)**

78. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

79. 47 U.S.C. § 227(c) directed the FCC to conduct a rulemaking proceeding "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."

80. In response, the FCC issued regulations including 47 C.F.R. § 64.1200(d), which, as amended, provides in pertinent part:

> No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) ***Written policy.*** Persons or entities making . . . calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) ***Training of personnel.*** Personnel . . . engaged in any

> aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) ***Recording, disclosure of do-not-call requests.*** If a person or entity making . . . any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . . If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. . . .

81. Under 47 C.F.R. § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers.

82. Plaintiff and the Stop Class members are residential telephone subscribers who received more than one text message made for telemarketing or solicitation purposes that Defendant initiated, caused to be initiated, and/or that were made by or on behalf of Defendant. Defendant failed to implement the requisite procedures and personnel training, as demonstrated by its repeated failure to honor opt-out requests.

83. Plaintiff and the Stop Class members made requests to Defendant or the sender not to receive texts made by or on behalf of Defendant.

84. Plaintiff and the Stop Class members revoked any consent they may have provided Defendant by responding with “stop” or similar opt-out instructions.

85. Defendant continued to text message Plaintiff and the Stop Class members, and/or caused such text messages to be sent by or on behalf of Defendant, to

induce purchases of UFC GYM memberships, renewals, recovery services, personal training, and related goods or services.

86. Defendant failed to honor Plaintiff's and the Stop Class members' opt-out requests.

87. Upon information and belief, Plaintiff's and the Stop Class members' do-not-call requests were recorded or maintained by parties other than Defendant, including UFC GYM franchisees, managers, and vendors approved by Defendant, such as ABC Fitness Solutions or GymSales Software.

88. Because the text messages at issue were made by or on behalf of Defendant, Defendant is liable under 47 C.F.R. § 64.1200(d)(3) for any failures to honor those do-not-call requests.

89. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

90. Plaintiff and the Stop Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

91. Plaintiff and the Stop Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

92. Plaintiff and the Stop Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

93. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

94. Defendant has violated 47 C.F.R. § 64.1200(d) by initiating telemarketing text messages and/or having such messages made on its behalf while failing to honor

opt-out requests, failing to maintain the required policies and procedures, and failing to train personnel and agents engaged in telemarketing.

95. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Stop Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, an award of $1,500.00 in statutory damages for each knowing or willful violation, and injunctive relief.

**COUNT II**

**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)**

**(On Behalf of Plaintiff and the DNC Registry Class)**

96. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

97. In addition to the regulations set forth in 47 C.F.R. § 64.1200(d), the FCC promulgated 47 C.F.R. § 64.1200(c)(2) pursuant to 47 U.S.C. § 227(c). Section 64.1200(c)(2) provides that no person or entity shall initiate any telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

98. Under 47 C.F.R. § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(c) and (d) are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers.

99. As alleged above, Plaintiff registered Plaintiff's residential cellular telephone number on the National Do Not Call Registry on or about June 16, 2012, more than 31 days before the text messages at issue.

100. Defendant nevertheless initiated, caused to be initiated, and/or made or had made on its behalf more than one text message solicitation to Plaintiff's and the DNC Registry Class members' registered telephone numbers within a 12-month period.

101. The text messages at issue constituted "telephone solicitations" under 47 U.S.C. § 227(a)(4) because they were initiated for the purpose of encouraging the purchase of goods or services, including UFC GYM memberships, membership renewals, youth membership add-ons, and recovery services.

102. Upon information and belief, Defendant did not access or use the National Do Not Call Registry database to identify and suppress registered telephone numbers before sending them text message solicitations. Whether any DNC Registry Class member recipient provided signed, written permission is capable of class-wide determination from Defendant's and its vendors' records.

103. To the extent any established business relationship ever existed between Defendant and Plaintiff or a DNC Registry Class member, it terminated upon the subscriber's request that the messages stop. See 47 C.F.R. § 64.1200(f)(5)(i).

104. Defendant's violations were negligent, and/or knowing or willful. Among other things, Defendant continued sending text message solicitations to Plaintiff's registered telephone number after receiving Plaintiff's seller-specific "Stop" request.

105. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and the DNC Registry Class members, having received more than one text message within a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(c), are entitled to an award of $500.00 in statutory damages for each and every negligent violation, an award of $1,500.00 in statutory damages for each knowing or willful violation, and injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(c) and (d) by (1) maintaining the required written policies; (2) providing training to its personnel engaged in telemarketing; (3) maintaining a do-not-call list; and (4) refraining from initiating telephone solicitations to telephone numbers registered on the National Do Not Call Registry; and

e) Such further and other relief as the Court deems necessary.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: July 17, 2026

Respectfully submitted,

*/s/ Ignacio Hiraldo*

Ignacio Javier Hiraldo, Esq.
SBN 354826
**IJH LAW**
1100 Town & Country Road
Orange, CA 92868
Phone: (657) 200-1403
Email: ijhiraldo@ijhlaw.com

Lisa M. Freeman
SBN 258549
**Dapeer Law, P.A.**
1500 W Olympic Blvd. Suite 550
Los Angeles, CA 90064
323-701-0508
Email: lisa@dapeer.com

*Counsel for Plaintiff and the Proposed Classes*